UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JORGE ASTUDILLO,<br>    Petitioner,<br><br>v.<br><br>PATRICIA HYDE; KRISTI NOEM;<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY; PAMELA BONDI;<br>EXECUTIVE OFFICE FOR<br>IMMMIGRATION REVIEW; and<br>MICHAEL NESSINGER,<br>    Respondents. | C.A. No. 25-551-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Jorge Astudillo brings a habeas petition under 28 U.S.C. § 2241, seeking an order of immediate release from the custody of Immigration and Customs Enforcement ("ICE") or, in the alternative, an order that a bond hearing be held before an Immigration Judge ("IJ"). ECF No. 1. Mr. Astudillo's case arises from an incident in which ICE officials arrested him, not based on any warrant, but merely because they concluded that he "match[ed] the description" of a different Hispanic male they were pursuing.[1] ECF No. 1-2 at 2-3. The Government argues that Mr.

---

[1] This is the latest example of a growing number of so-called "collateral arrests," which occur when ICE conducts an enforcement operation against a specific person but ends up apprehending additional individuals—such as relatives, co-workers, or bystanders—who were neither the target of the original investigation nor subject to any arrest warrant. *See Noem v. Vasquez Perdomo*, 606 U.S. ——, ——, 2025 WL 2585637, at *7 (2025) (Sotomayor, J., dissenting) (citing José Olivares, *US*

Astudillo's petition ought to be dismissed because he is subject to mandatory detention and thus not entitled to a bond hearing, and that he has not exhausted his administrative remedies. ECF No. 6. For the reasons stated, the Court GRANTS Mr. Astudillo's petition and DENIES the Government's Motion to DISMISS.

I.  BACKGROUND

A.  Statutory and Regulatory Framework

The two Immigration and Nationality Act ("INA") provisions at issue are 8 U.S.C. §§ 1225 and 1226. Recently, district courts across the country—this one included—have spilled much ink distinguishing between these two provisions. *See, e.g., Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *1 (D.R.I. Oct. 27, 2025); *see also Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025) (collecting cases).

In short, Section 1225(b) authorizes the mandatory detention of noncitizens who are "applicant[s] for admission" into the U.S. but who have been found to be "not clearly and beyond a doubt entitled to be admitted" by an immigration officer. *Tomas Elias*, 2025 WL 3004437, at *1 (quoting 8 U.S.C. § 1225(b)(2)(A)). The Supreme Court has framed this provision as relating to a "process of decision [that] generally begins at the Nation's borders and ports of entry…." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

---

*Immigration Officers Ordered to Arrest More People Even Without Warrants*, The Guardian (June 4, 2025, at 07:00 ET), https://www.theguardian.com/us-news/2025/jun/04/immigration-officials-increased-detentions-collateral-arrests).

By contrast, Section 1226(a) provides for the discretionary detention[2] of noncitizens who are "*already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). This statute permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General" or their designees. *Rodriguez v. Bondi*, No. 25-cv-406-JJM-PAS, 2025 WL 2899769, at *1 (D.R.I. Oct. 10, 2025)). If arrested on such a warrant, the Government may continue to detain the noncitizen or release them on bond or conditional parole. *Id.* (citing 8 U.S.C. §§ 1226(a)(1)-(2)).

Noncitizens detained pursuant to Section 1226(a) have a Fifth Amendment Due Process right to seek review of their detention decision at a bond hearing (also known as a "custody redetermination hearing") before an IJ. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). At that hearing, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* If the Government fails to meet this burden, then bond or conditional parole must be granted. *Rodriguez*, 2025 WL 2899769, at *1. If the Government does meet its burden and the IJ determines that the noncitizen must remain in custody, then the noncitizen may appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). *Id.* (citing 8 C.F.R. §§ 1003.19(f), 1003.38).

---

[2] Another provision of Section 1226, 8 U.S.C. § 1226(c), provides for the mandatory detention of noncitizens who have been convicted of specified crimes. *See Hernandez-Lara*, 10 F.4th at 35. However, this is not the provision under which Mr. Astudillo has been detained and is thus not at issue here.

B.  Factual Background

Mr. Astudillo is a citizen of Ecuador who has resided in the United States for over two decades. ECF No. 1 at 1, 4. On the morning of August 24, 2025, Mr. Astudillo was doing work at a residence in Manchester, Connecticut when he was apprehended by ICE officials. ECF No. 1-2 at 3. The ICE officials concede that they were attempting to locate a different Hispanic male, and that Mr. Astudillo happened to "match[ ] the description" of that individual. *Id.* at 2. They also concede that they had no warrant to arrest Mr. Astudillo. *Id.* at 3. Rather, they arrested him after they asked him for identification and determined that he had entered the United States without authorization. *Id.*

Subsequently, ICE transferred Mr. Astudillo to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he currently remains detained. ECF No. 1 at 1. He has been charged with having entered the United States without admission or inspection under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and 8 U.S.C. § 1182(a)(6)(A)(i), and DHS has placed him in removal proceedings before the Chelmsford Immigration Court. *Id.* at 5; ECF No. 6 at 4.

Following his arrest and transfer to the Wyatt Detention Facility, ICE issued a custody determination to continue Mr. Astudillo's detention without an opportunity to post bond or be released on other conditions. *Id.* at 6. Mr. Astudillo requested a review of this decision at a bond hearing before an IJ. *Id.*

On September 11, 2025, Mr. Astudillo appeared in Chelmsford Immigration Court. ECF No. 6 at 4. At the hearing, the IJ found him to be statutorily ineligible

4

for bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[3] ECF No. 1 at 6.

On October 23, 2025, Mr. Astudillo filed this habeas petition, seeking release from custody or, in the alternative, a bond hearing under 8 U.S.C. § 1226(a). *Id.* at 12. The Government objects to his request for relief. ECF No. 6.

## II.  DISCUSSION

### A.  Section 1226(a) Applies, Not Section 1225(b)

The Government first argues that Mr. Astudillo is subject to mandatory detention under Section 1225(b)(2) and thus not entitled to a bond hearing. ECF No. 7 at 5. Its position is that Mr. Astudillo "is treated, for constitutional purposes, as if he had been stopped at the border." *Id.* The Government also relies on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), a recent BIA decision finding that IJs lack the authority to redetermine the custody of noncitizens who are being held pursuant to Section 1225. *Id.* at 6.

---

[3] Mr. Astudillo contends that there appears to be an error in the written IJ Order because:

> While the written IJ Order states that his [bond] request was denied, based on danger and flight risk, that written document … is completely at odds with the audio recording of the hearing, in which the IJ clearly found that [Mr. Astudillo] was not eligible for bond, because he had entered without inspection and pursuant to *Matter of Yajure Hurtado*. The portal also reflects that "[t]he Immigration Judge found no jurisdiction." At the hearing, the Judge made no findings as to danger or flight risk.

ECF No. 1 at 6 n.1. Given that the Government does not contest this point, the Court accepts Mr. Astudillo's position as true.

5

At the same time, the Government acknowledges that "questions of law in this case, and the challenges to the government's policy and practice, substantially overlap with" recent court decisions in *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025), and *Elias Escobar v. Hyde*, No. 1:25-cv-12620-IT, 2025 WL 2823324 (D. Mass. Oct. 3, 2025). *Id.* at 6. The Government concedes that, "[s]hould the Court apply the same reasoning the courts did in those cases to this one, the legal principles espoused in those cases would likely warrant the same conclusion here." *Id.*

As this Court already stated in *Tomas Elias*, "the reasoning in *Doe*, *Escobar*, and similar cases remains correct." 2025 WL 3004437, at *2. There is no dispute that Mr. Astudillo is *not* seeking admission into the country, which would justify his detention under Section 1225(b)(2). *Id.* Rather, he has been in the country for over two decades, which means that his detention is governed by Section 1226(a). *Id.* As for the BIA's decision in *Matter of Yajure Hortado*—a decision contrary to courts' uniform understanding of Sections 1225 and 1226 and at odds with the BIA's own precedent and with decades of DHS practice—it is not binding on this Court, and it need not be afforded any deference. *Id.* (citing *Doe*, 2025 WL 2576819, at *5; *Chogllo Chafla v. Scott*, Nos. 2:25-cv-00437-SDN, 2:25-cv-00438-SDN, 2:25-cv-00439-SDN, 2025 WL 2688541, at *5 (D. Me. Sept. 22, 2025)).

The Government continues to advance an interpretation of the INA that "would require the mandatory detention of hundreds of thousands, if not millions, of individuals currently residing within the United States." *Romero*, 2025 WL 2403827,

6

at *1.  But this interpretation has repeatedly been rejected by this Court, along with dozens of other courts across the country, because it goes against "the plain language of the statute, the legislative history, and traditional canons of statutory interpretation." *Tomas Elias*, 2025 WL 3004437, at *3 (quoting *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-00479-SDN, 2025 WL 2783642, at *2 (D. Me. Sept. 30, 2025)); *see also Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 2809996, at *5 (D. Mass. Oct. 3, 2025) (collecting cases).  As such, the clear weight of authority establishes that Section 1226(a) applies to Mr. Astudillo, not Section 1225(b).

### B. Exhaustion

The Government also argues that Mr. Astudillo should be required to exhaust his administrative remedies before bringing his habeas petition.  ECF No. 6 at 5-6.  For the same reasons stated in *Tomas Elias*, the Court will not require exhaustion in this case. 2025 WL 3004437, at *3.  Mr. Astudillo is bound to suffer severe irreparable harm if he continues to be detained without clear reason, and no proceeding before the Immigration Court or the BIA will be able to adjudicate the constitutionality of his detention.  *Id.*  Further, the Government's insistence that Mr. Astudillo, on the one hand, is statutorily ineligible for a hearing before an IJ but should be, on the other hand, required to exhaust his administrative remedies before an IJ are two positions that are "plainly at odds with one another." *Id.*

Accordingly, the Court finds that waiver of any exhaustion requirement is appropriate here and moves to the merits of Mr. Astudillo's petition.

### C. Due Process

A court may grant a writ of habeas corpus where a petitioner demonstrates that his detention violates the Constitution or laws of the United States. *Chang Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *10 (D. Me. Sept. 29, 2025) (citing 28 U.S.C. § 2241(c)). Mr. Astudillo claims that he is being detained unlawfully pursuant to Section 1225(b)(2) and that his continued detention absent a bond hearing violates his due process rights. ECF No. 1 at 11-12.

To determine whether Mr. Astudillo's detention violates due process, the Court weighs the *Mathews* factors, which are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hernandez-Lara*, 10 F.4th at 27-28 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

Here, for the same reasons elucidated by this Court in previous cases, the Court has no trouble siding with Mr. Astudillo. *See Tomas Elias*, 2025 WL 3004437, at *4-5; *Rodriguez*, 2025 WL 2899769, at *4-5; *Casun v. Hyde*, No. 25-cv-427-JJM-AEM, 2025 WL 2806769, at *3-4 (D.R.I. Oct. 2, 2025). First, he has a strong private interest in his liberty. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (stating that "the most elemental of liberty interests" is "the interest in being free from physical detention by one's own government"). Second, he faces a substantial risk of erroneous

8

deprivation of his liberty interest because the Government has made no showing that he poses a flight or safety risk. *See Tomas Elias*, 2025 WL 3004437, at *5. Third, any interest the Government may have in Mr. Astudillo's continued detention without a bond hearing is heavily outweighed by the other two *Mathews* factors. *See Rodriguez*, 2025 WL 2899769, at *5. Furthermore, the public interest weighs against "unnecessary detention," given the "substantial societal costs" it imposes and the "breadwinners, caregivers, parents, siblings, and employees" who are removed from the community as a result. *Id.* (quoting *Hernandez-Lara*, 10 F.4th at 33).

As such, because the proper statutory provision governing his detention is Section 1226(a) (and *not* Section 1225(b)(2)), Mr. Astudillo is entitled to a bond hearing before an IJ in which the Government bears the burden of proving that he poses a flight risk or is a danger to the community. *Hernandez-Lara*, 10 F.4th at 41. That he has been denied such a hearing is a clear violation of his due process rights. *Id.*

### D. Warrant Requirement

There is also the issue of the Government arresting Mr. Astudillo without a warrant. *See* ECF No. 1-2 at 3. Since he is being held pursuant to Section 1226(a), the issuance of a warrant is a "necessary condition" to justify discretionary detention under the statute. *Chogllo Chafla*, 2025 WL 2688541, at *11. As the court in *Chogllo Chafla* explained, Section 1226(a) plainly states: "*On a warrant issued by the Attorney General*, a[ ] [noncitizen] may be arrested and detained ...." *Id.* (emphasis in original) (quoting 8 U.S.C. § 1226(a)). Because the Government failed to obtain a

9

warrant as required by statute, Mr. Astudillo may not be detained and must be immediately released. *Id.* (releasing noncitizen detainees who were arrested without warrants until they received bond hearings); *see also Chiliquinga Yumbillo*, 2025 WL 2783642, at *5 (same).

### III. CONCLUSION

Accordingly, the Court GRANTS Mr. Astudillo's habeas petition. ECF No. 1. The Government is ORDERED to provide him with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten days of the date of this order. Further, the Court ORDERS the Government to release Mr. Astudillo immediately pending the bond hearing. The Government shall set minimal release conditions that will reasonably assure Mr. Astudillo's appearance at the bond hearing. Finally, the Court ORDERS the Government to file a status report within five days of Mr. Astudillo's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reasons for that denial.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

October 30, 2025